UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

CRIMINAL ACTION NO. 5:16-CR-05-JMH
(Related Civil Action No. 5:18-CV-527-JMH)

UNITED STATES OF AMERICA,                    PLAINTIFF/RESPONDENT,

V.          **RECOMMENDED DISPOSITION**

JASON EDWARD MYERS,                          DEFENDANT/MOVANT.

\*\*\* \*\*\* \*\*\* \*\*\*

Jason Edward Myers was convicted of being a felon in possession of a firearm and sentenced to incarceration for 120 months. He now moves to vacate his conviction and sentence under 28 U.S.C. § 2255, asserting that his decision to forego a guilty plea to the one count indictment and proceed to trial was the result of ineffective assistance of his counsel. [R. 73]. He charges:

1. That his counsel could not inform him "whether or nor his prior Florida conviction for Burglary was a qualifying predicate offense under the Armed Career Criminal Act, 18 U.S.C. § 924(e)"; and

2. That his counsel was ineffective because she failed to advise him of his option to enter an open plea to the one count indictment.

[R. 73-1 at 2, 10]. As a result of these alleged deficiencies, Myers claims that he missed the opportunity to plead guilty. Consequently, he proceeded to trial and, after being convicted, received a longer sentence than if he had plead guilty because he lost credit for acceptance of responsibility, and thus a three-level reduction in his offense level.

Under 28 U.S.C. § 2255, a prisoner in custody under a sentence of a United States Court may petition that court to amend his or her sentence upon the grounds that the sentence was imposed in violation of the Constitution or laws of the United States, that the court imposing the sentence lacked jurisdiction to do so, that the sentence is excessive, or that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). A defendant that alleges an error occurred on constitutional grounds "must establish an error of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)). Under the Sixth Amendment, criminal defendants have the right to the assistance of counsel for their defense. U.S. Const. amend. VI. The two-part test announced in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), will control the analysis of his Sixth Amendment ineffective-assistance-of-counsel challenge.

To satisfy *Strickland*, the movant must first establish deficient performance. This requires showing "that counsel's representation fell below an objective standard of reasonableness" as measured under "prevailing professional norms" and evaluated "considering all the circumstances." *Id.* at 687-689. In order to prove prejudice, the movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. In the plea-bargaining context, this prejudice-prong "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *accord Lafler v. Cooper*, 566 U.S. 156, 163 (2012); *Missouri v. Frye*, 566 U.S. 134, 147-48 (2012); *Fitzpatrick v. Robinson*, 723 F.3d 624, 634 (6th Cir. 2013); *Cauthern v. Colson*, 736 F.3d 465, 483 (6th Cir. 2013). A defendant must show that "there is a reasonable probability that, but for

counsel's errors, he would not have pleaded and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. at 59, (1985). In other words, a defendant must demonstrate a reasonable probability that "the outcome of the plea process would have been different with competent advice." *Lafler*, 566 U.S. at 163. Therefore in this case, Myers bears the burden. *McQueen v. United States*, 58 F. App'x 73, 76 (6th Cir. 2003) (*per curiam*). Myers challenges the effectiveness of his trial counsel pre-trial representation: a constitutional challenge. Thus, Myers must establish that counsel's errors were so fundamentally grave as to render the entire proceedings invalid. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006)

On August 26, 2019, the Court held an evidentiary hearing on the limited issue of whether Myers received ineffective assistance of counsel during plea consultation. Following the hearing, the parties submitted supplemental briefs in support of their positions. [R. 96, 97]. Having carefully reviewed the record, the undersigned recommends that Myers' motion [R. 73] be denied, and that no Certificate of Appealability be issued.

**I.**

Myers was charged in a one count indictment with being a felon in possession of a firearm. [R. 1]. During the plea-negotiation phase of his case, his pivotal concern was whether he qualified as an armed career criminal under 18 U.S.C. 924(e)(1). It mattered because, if Myers was an armed career criminal, he faced a minimum period of incarceration of 15 years. If he was not an armed career criminal, then the maximum period of incarceration for his offense was 10 years.

The first proposed plea agreement did not address an enhancement as an armed career criminal. [R. 94, Exhibit 2]. In a letter to Myers, dated March 17, 2016, his counsel discussed the proposed plea agreement and indicated that based upon her review of his criminal history,

the sentencing guidelines would recommend a sentencing range of "57 to 71 months or 70 to 87 months." [R. 98 at 8-9; *Id*.]. In the letter counsel also cautions: "However, this could all change. The prosecutor is looking into whether you qualify under the Armed Career Criminal Act. He is verifying whether the burglary and robbery priors were out of the same offense – hopefully they are. If you have been convicted more than twice of a "violent felony" or a "serious" drug crime, the Act provides a **minimum sentence of fifteen years**, instead of the ten-year maximum prescribed under the Gun Control Act." [R. 94, Exhibit 2 (emphasis in original)]. The testimony at the evidentiary hearing regarding this correspondence reveals that Myers was ready to plead guilty to this first plea offer. [R. 98 at 8, lns. 24-24]. Because of this, counsel filed a motion for re-arraignment and the Court scheduled a change-of-plea hearing for April 11, 2016. [R. 14, 15]. Unfortunately, the hearing did not go as planned:

> Q. But you didn't enter a plea of guilty at that time –
>
> A. No.
>
> Q. – correct?
>
> A. No. I tried to. I mean, that was my whole goal, is to go in there and plead guilty and – and – move on.  And – then the armed career factor come up, and she tells me I'm looking at 262 months to 327 months.

[*Id*. at 12-13; *see also* R. 16].

The change at the re-arraignment occurred after the Probation Officer advised the parties that Myers' 1997 Florida burglary conviction could subject him to an enhancement under the Armed Career Criminal Act (ACCA). [R. 50 at 15, ¶ 48]. Myers testified that he was unsure of what that meant, but quickly learned that —worst case scenario— it subjected him to a sentence of 262 to 327-months under the guidelines. [R. 98 at 10, 14, 26-27].

Due to the possible ACCA-application, the parties mutually agreed to continue the re-arraignment in order to conduct further investigation, and the April 12, 2016 jury trial was continued generally. [*See* R. 16]. The government withdrew the first plea agreement and offered Myers a new agreement, with different terms. The new offer recommended a mandatory minimum sentence under the ACCA of 180 months (or 15 years). [R. 98 at 13, 37-39]. Counsel then met with Myers shortly after, and his testimony regarding the meeting was as follows:

> A. I was transported several days after that. You know, she – I went back to Grayson County. I come back the next day and there's another plea offer. Will I take an armed career? And I told her that, 'No. I don't want to take the armed career.' Because I didn't think I was eligible for it. And the next day, it goes from armed career to 15 years. 'Will you take just 15 years, a binding plea?' And – and at this point I'm losing – I'm losing all faith in – in—in anything she says, because she can't give me a direct answer on – on anything, you know.
>
> Q. Well, what were you asking her to give you a direct answer on?
>
> A. If I was armed career eligible at this point. Because I went from looking at 41 to what I thought was 71 months, which the paper here says 87 months at the high end to 262 to 327 months. That's a considerable amount of more years, do you know what I mean, to jeopardize my life, you know. And – and I said, 'My kids will be grown by the time I get out.'

[*Id.* at 13-14].

> Q. Did she ever explain to you at this exact time, in April and May and June of 2016, that the issue of armed career criminal was ever-evolving?
>
> A. Yes, sir.
>
> Q. She did state that?
>
> A. She – she said that a lot of laws were changing and she just didn't – she – she didn't know, you know.
>
> Q. All right, Now, I want to go back to – so she didn't know. Did she talk to you about having you enter into a contingent guilty plea?
>
> A. No, sir.

> Q. Did she ever – contingent guilty plea pursuant to a plea agreement; no, sir?
>
> A. No, sir.
>
> Q. Did she ever talk to you about entering a plea of guilty pursuant to the indictment without the benefit of a plea agreement?
>
> A. No, sir.

[*Id.* at 14-15].

Later in the hearing, Myers testified that counsel informed him that the second plea agreement preserved the right to challenge whether he was an armed career criminal:

> Q. All right. Now, I – this has been held out by the United States to be the last plea agreement that was provided to Ms. Lewis. Do you recall discussing with Ms. Lewis and reviewing with Ms. Lewis other plea agreements after that first one that happened where you didn't sign it?
>
> A. Well, at – at first it was just like a verbal question. 'Do you want to plead guilty to the armed career?' And I never got to see the actual plea agreement. And then she comes back and asks me, 'Well, let me talk to Mr. Bradbury. Will you take 15 years, a binding plea, just waive your rights and take 15 years?' So I – I didn't get to see the physical plea agreement until the third, like – well, yeah, it would be like the third negotiation. **Then she comes with a physical plea agreement and says, 'Well, we'll let you challenge the armed career status.'**

[*Id.* at 20 (emphasis added)].

In other words, the second version of the plea agreement contained a provision in which the government recommended that Myers be determined to be an armed career criminal under 18 U.S.C. § 924(e)(1), but expressly reserved his right to object and to challenge that recommendation before the Court and on appeal. [R. 73-2]. Myers testified that he understood that the district judge would be making the final ACCA determination:

> Q. Well, let's go at it this way. Did they -- did Brandi explain to you that the Federal Judge, the sentencing judge was the only -- was the ultimate person to make the determination whether you were an armed career criminal or not?

>   A. I -- I asked her. Because I wanted to plead guilty. And if I pled guilty, I was keeping those levels. I knew that if I took it to trial, I'm going to lose these -- I'm going to get a lot more time, just because I went to trial. And that's my last -- that's -- I didn't want -- I didn't want to do that. But when -- when I -- when I'm looking at the armed career now, I don't have any -- I didn't have any option.
>   Because I asked her, I said, "Am I armed career eligible?" And she tells me that she didn't -- she wasn't -- she didn't know and it was up to the Judge. It is up to Mr. Hood if I'm armed career eligible.
>   In my prior conversations with Mr. Hood, he's not a pleasant man; you know, he -- he is -- it's like somebody out of a Western. And that's just my perception of the guy, that he would like to hang everybody. So, I mean, if this is up to Mr. Hood, I'm done for. Do you know what I mean?
>   He is going to give me -- and he even stated in my sentencing, he said, "Mr. Myers, this is your lucky day." I was like "Shew. Finally I'm going to get a break." He said, "I'm going to give you 120 months. I would like to give you a little more." So he -- he was wanting -- he was wanting to get a little bit more than just blood out of me.

[R. 98 at 27-28].

Lewis offered similar testimony regarding Myers' understanding. In addition, she testified that she cautioned Myers that the judge, in his discretion, would be the one to determine his ACCA status at sentencing. [*Id.* at 28, 30, 39]. Myers was unsatisfied with counsel's failure to provide unequivocal assurance that the ACCA did not apply. And because Lewis could not give him that, he asked her to remove herself from the case. [*Id.* at 15-16, 30]. Counsel filed a motion to withdraw and the Court set the matter for a hearing. However, the motion was denied, and Lewis stayed on the case. [*See* R. 23, 27].

Myers ultimately rejected the second plea offer, went to trial, and lost. He testified that he rejected the agreement because counsel failed to communicate several matters to him. He argues, contrary to the evidentiary record, that counsel failed to tell him that the agreement preserved his right to appeal the ACCA challenge. [R. 98 at 40]. He further states that counsel never made him fully aware that the failure to reject the agreement meant a loss of three levels for acceptance of responsibility. [*See id.* at 35-36, 40-41]. By contrast when Lewis testified, she

stated that she went over the two options many times with him. To her, it seemed like he fully understood that only by pleading guilty would he get credit for acceptance of responsibility. [*Id.* at 49, 51]. She admitted that she could not give Myers the one hundred percent assurance that he was looking for, as to whether the armed career criminal enhancement applied. [*See id*. at 30-50]. Counsel stated that she believed Myers was armed with all the right facts, including the possibility of an unfavorable enhancement under the ACCA and the appeal, versus going to trial, or taking the plea agreement. [*Id.* at 59].

## II.

Myers asserts that his counsel could not inform him "whether or nor his prior Florida conviction was a qualifying predicate offense under the Armed Career Criminal Act, 18 U.S.C. § 924(e)." [R. 73-1 at 2]. In addition, he claims that his counsel was ineffective because she failed to advise him of his option to enter an open plea to the one count indictment, and further failed to advise him that by going to trial he would lose any credit for acceptance of responsibility. However, his only facially valid claim is based upon his assertion that counsel could not advise him whether he would be an armed career criminal. The other claims are simply contradicted by the record, as set above. Further, he makes no showing that any failure to advise on taking an open plea resulted in prejudice, or would have altered his decision to proceed to trial.

Myers' prior conviction under Florida law was for "Burglary of a Structure," a crime for which he received three years of probation. [*See* R. 50, ¶ 28]. Indeed, it is clear from the record and from his testimony at the evidentiary hearing that Myers' primary issue was counsel's inability to assure him that he would not be found to be an armed career criminal.

This was important to Myers, because such a finding would mean a minimum sentence of 15 years, and a Guidelines range of 262-327 months if he lost at trial.

Pointing to counsel's deficiencies, Myers relies on *Sawaf v. United States*, 570 F. App'x 544 (6th Cir. 2014), a case in which counsel failed to advise his client about the applicable sentencing guidelines prior to his trial, resulting in "objectively unreasonable and constitutionally ineffective assistance of counsel at the pre-trial stage of the proceedings." *Id*. at 546 (citing *Smith v. United States*, 348 F.3d 545, 552-53 (6th Cir. 2003)). That failure by counsel resulted in a presumption of prejudice from counsel's deficient performance due to the 17-year difference between the plea offer and the sentence the petitioner received after conviction. *Sawaf,* 570 F. App'x at 547. The Sixth Circuit reversed, finding that:

> The applicable presumption means that the district court should have started its analysis by assuming that Sawaf had been prejudiced with regard to the plea negotiations, and then asked whether there was evidence to rebut that presumption. Instead, the district court determined that Sawaf's claim that he would have entered a guilty plea if adequately informed was not credible, given Sawaf's continued insistence that he was innocent, prior to and during the trial, after the trial, and even during the evidentiary hearing, and effectively declined to credit Sawaf with the applicable presumption of prejudice.

*Id*. at 548.

*Sawaf*, however, is inapplicable here because Myers cannot meet his burden of showing that counsel was deficient. For instance, the record before this court does not reflect a complete failure by counsel to review the sentencing guidelines with Myers, as in *Sawaf.* Rather, the alleged error now before us is couched in terms of whether counsel was constitutionally ineffective for being unable to guarantee that Myers would not be found to be an armed career criminal. He argues that *if* counsel had given him competent advice he could have accepted the government's plea offer or entered an open plea, he would not have been found to be an armed career criminal, would have been entitled to a three level reduction

in the offense level for his acceptance of responsibility and received a substantially lighter sentence. In evaluating this claim, it is important to consider the state of the law regarding whether Myers' prior Florida conviction for burglary qualified as a predicate offense under the ACCA. At the time Myers was entertaining the option of whether to plea or go to trial, this was not an uncomplicated analysis.

Under the Armed Career Criminal Act, "a defendant who violates 18 U.S.C. § 922(g) and has three prior convictions for serious drug offenses or violent felonies must receive a fifteen-year mandatory minimum sentence." *United States v. Mitchell*, 743 F.3d 1054, 1058 (6th Cir. 2014) (citing *United States v. Johnson*, 707 F.3d 655, 658 (6th Cir. 2013)). A "violent felony" includes "burglary" and other listed enumerated offenses. 18 U.S.C. § 924(e)(2)(B)(ii). The analysis of whether a prior conviction for burglary falls within the generic definition of the offense, and thus a predicate offense for the ACCA has been a subject of developing law.

First, in *Taylor v. United States,* 495 U.S. 575 (1990), the Supreme Court emphasized that courts must use a categorical approach, looking only to the statutory definitions of the prior offenses, and not to the particular facts underlying those convictions, to see if the elements of the prior conviction matched the elements of the generic crime of burglary. *Taylor*, 495 U.S. at 600. The court concluded "that an offense constitutes 'burglary' for purposes of § 924(e) sentence enhancement if either its statutory definition substantially corresponds to 'generic' burglary, or the charging paper and jury instructions actually required the jury to find all the elements of generic burglary in order to convict the defendant." *Id*. at 602.

> We think the only plausible interpretation of § 924(e)(2)(B)(ii) is that, like the rest of the enhancement statute, it generally requires the trial court to look only to the fact of conviction and the statutory definition of the prior offense. This categorical approach, however, may permit the sentencing court to go beyond the mere fact of conviction in a narrow range of cases where a jury was actually required to find all the elements of generic burglary. For example, in a State

> whose burglary statutes include entry of an automobile as well as a building, if the indictment or information and jury instructions show that the defendant was charged only with a burglary of a building, and that the jury necessarily had to find an entry of a building to convict, then the Government should be allowed to use the conviction for enhancement.

*Id*. at 602.

Then, in *Shepard v. United States*, 544 U.S. 13 (2005), the Supreme Court discussed a "modified" categorical approach, when addressing the question of which documents courts were permitted to consult when asking whether a prior burglary conviction matched the elements of the generic offense. In *Shepard*, the Court concluded that the documents admissible to establish the nature of an ACCA predicate conviction . . were "the terms of the charging document, the terms of the plea agreement or transcript of colloquy between judge and defendant in which the factual basis of the plea was confirmed by the defendant, or some comparable judicial record of this information." *Shepard*, 544 U.S. at 26. After *Shepard*, however, the circuits split over when judges were permitted to review such documents. The split involved whether the modified categorical approach was only allowed when a prior statute defined multiple crimes with different elements, or whether the modified categorical approach could always be used to allow a court to review charging documents to decide if a prior conviction qualified as an ACCA predicate. *Mathis v. United States*, 136 S.Ct. 2243, 2249-51 (June 23, 2016).

> Though *Shepard* provided clear guidance on what documents courts could consider in applying the modified categorical approach, a further circuit split developed concerning when courts could reach the modified categorical approach at all. *See Descamps v. United States*, 133 S. Ct. 2276, 2283 & n.1 (2013) (noting the presence of this circuit split). Some courts held that they could employ the modified categorical approach whenever a statute criminalized a broader range of conduct than the federal generic offense. *See, e.g., United States v. Armstead*, 467 F.3d 943, 948 (6th Cir. 2006), abrogated by *Descamps*, 133 S. Ct. 2276. Others held that when a statute was merely broad but did not set out

a disjunctive list of alternative forms of violation, only the pure categorical approach was permissible.

*PARSING PRIOR CONVICTIONS: MATHIS V. UNITED STATES AND THE MEANS ELEMENT DISTINCTION,* Columbia Law Review Vol. 118 No. 1, Alexander G Peerman.

As stated previously, Myers' prior conviction for burglary under Florida law was for "Burglary of a Structure," for which he received three years of probation. [R. 50, ¶ 28]. Thus, in order to determine whether his conviction counted as a predicate offense, the sentencing judge, in this case District Judge Hood, would be required to see if, under Florida law, the elements of the crime of "Burglary of a Structure" matched the elements of the generic crime of burglary. In order to do that, he would have been able to examine documents from Florida that would clearly indicate the nature of Myers' past offense, and then determine if it was properly calculated as a predicate offense under the ACCA. As a result of the law, as it existed at the time of Myers' plea negotiations and trial, a fair reading of the elements of the crime of Burglary in Florida could very well lead to the conclusion that his past offense counted as a predicate offense under the ACCA. Such was the finding in the case of *United States v. Weeks*, 711 F.3d 1255 (11th Cir. 2013). In that case, Timothy Weeks plead guilty to the offense of being a felon in possession of a firearm and ammunition. *Weeks*, 711 F.3d at 1258. He appealed his 180-month sentence imposed after the court found him to be an armed career criminal, arguing that a prior Florida conviction for Burglary under Florida's Burglary statute, Fla. Stat. § 810.02 did not count as a predicate offense under the ACCA. *Id.* However, in *Weeks*, the court found that it counted, stating:

> Although Florida's burglary statute facially encompasses both generic and non-generic burglaries, a conviction under the statute can still qualify as a generic burglary if the charging documents or other *Shepard*-approved sources show that the offense involved unlawful entry into a building or structure. *See United States v. Matthews*, 466 F.3d 1271, 1274–75 (11th Cir.2006); *see also United States v. Rainer*, 616 F.3d 1212, 1215 (11th Cir.2010) (explaining that "a conviction

> under a non-generic burglary statute" still qualifies as a violent felony under the ACCA's enumerated-offenses clause "if the indictment shows that the defendant was charged only with a burglary of a building") (quotation marks, alterations, and ellipsis omitted). Because the charging documents show that Weeks was charged with unlawfully entering into three separate buildings with intent to commit a crime, his convictions qualify as generic burglaries under the ACCA's enumerated-offenses clause. . .

*Id*. at 1262-63.

At the time of his plea negotiations, a brief review of Myers' conviction as stated in his presentence report leads to a conclusion that there was a *substantial* possibility that he would be found to be an armed career criminal, and therefore subject to a minimum sentence of fifteen years. This is because the Judge Hood would have been tasked with reviewing the charging documents and determining if the crime of conviction fell within the generic definition of Burglary as articulated by the Supreme Court. But, counsel's inability to provide the guarantee that he would not be subject to an enhanced sentence under the ACCA was not the result of ineffective assistance.

It is true that "the failure of defense counsel to 'provide professional guidance to a defendant regarding his sentence exposure prior to a plea may constitute deficient assistance.'" *Smith v. United States*, 348 F.3d 545, 553 (6th Cir. 2003) (quoting *Moss v. United States*, 323 F.3d 445, 474 (6th Cir. 2003)). Indeed, such a failure stems from "counsel's … overarching duty to advocate [for] the defendant's cause[,] … to consult with the defendant on important decisions[,] and to keep the defendant informed of important developments in the course of the prosecution." *Strickland*, 466 U.S. at 688. However, this is not such a case. The Sixth Circuit has recognized that an attorney "has a clear obligation to fully inform [his] client of the available options." *Smith*, 348 F.3d at 552. In the plea context, this includes explaining "sentencing exposure the defendant will face as a consequence of exercising each of the

options available." *Id.* at 553. Failure to do so violates the defendant's right to effective assistance of counsel. *Id.* Notably, however, "the mere fact that an attorney incorrectly estimates the sentence a defendant is likely to receive is not a 'fair and just' reason to allow withdrawal of a plea agreement." *United States v. Stephens*, 906 F.2d 251, 253 (6th Cir. 1990); *see also United States v. Sweeney*, 878 F.2d 68, 70 (2d Cir. 1989) (stating that the sentencing guidelines "reinforce our earlier decisions on the issue. Under the Guidelines there will be many more detailed hearings regarding imposition of [a] sentence").

Myers wanted absolute, one hundred percent assurance that he was not a career offender; however, counsel was not required to provide this level of assurance given the status of the developing law. *See Alcorn v. Smith*, 781 F.2d 58, 62 (6th Cir. 1986) ("[N]onegregious errors such as failure to perceive or anticipate a change in the law . . . generally cannot be considered ineffective assistance of counsel."); *see also United States v. Harms*, 371 F.3d 1208, 1212 (10th Cir. 2004) ("The Sixth Amendment does not require counsel for a criminal defendant to be clairvoyant."). In the present case, during the period of plea negotiations, the prosecutor believed Myers was an armed career criminal, and the United States Probation Officer believed him to be an armed career criminal. Defense counsel was simply unable to say this, given the developing state of the law at that time.

After Myers' trial, the Supreme Court decided *Mathis*, which further modified the analysis of whether prior offenses qualify as predicate offenses under the ACCA. In *Mathis*, the Supreme Court held that the ACCA does not permit a court to examine documents under a modified categorical approach "when a defendant is convicted under a statute that lists multiple, alternative means of satisfying one (or more) of its elements." *Mathis*, 136 S.Ct. at 2248. "[T]he court has no call to decide which of the statutory alternatives was at issue in the

earlier prosecution." *Id*. at 2256. Instead, "the court may ask only whether the elements of the state crime and generic offense make the requisite match." *Id*. Courts may employ the "modified categorical approach" to examine "a limited class of documents" only when statutes have "multiple alternative elements." *Id*. 2249.

As a result, in deciding whether Myers' Florida Burglary conviction counted as a predicate offense after his trial, courts would only look to the statutory definitions, or elements, of the prior offense and not the particular facts underlying those convictions. Only if the statute had multiple alternative elements would a court then be authorized to review a limited class of documents. After *Mathis,* the Eleventh Circuit decided the case of *United States v. Esprit*, 841 F.3d 1235 (11th Cir. 2016). In that case, Esprit was convicted of being a felon in possession of a firearm and appealed his sentencing enhancement imposed under the Armed Career Criminal Act. *Id*. His appeal centered around his claim that his prior conviction for burglary in Florida, Fla Stat. § 810.02, counted as predicate offenses. *Id.* at 1237. The Court reviewed the matter, considering whether a prior conviction under the Florida burglary statute was equivalent to generic burglary. Similar to the case now before this court, the court in *Esprit* remarked that: "Now, in light of the Supreme Court's decision in *Mathis*, which elaborated on the appropriate analysis for considering whether an offense qualifies as an enumerated crime, the government agrees with Mr. Esprit that a Florida burglary conviction cannot serve as a predicate offense for his ACCA enhancement." *Id*. 1237. The *Esprit* Court, in fact found that the statute created a single indivisible crime that included non-generic burglary, and that an offense under this statute cannot be used as a predicate offense under the ACCA. *Id*. at 1241.

After *Mathis*, the United States conceded its position in this case and informed the Court that they did not oppose defense counsel's objections to the Presentence Report recommendation that Myers be found to be an armed career criminal. At sentencing, counsel still tried to convince the Court to grant Myers the acceptance of responsibility credit. She argued that, since Myers came to Court with the intention of pleading guilty the first time and was delayed only because of the uncertainty of the ACCA application, the Court should take all of this into consideration and grant him credit for acceptance of responsibility. [*See* R. 60 at 10]. The Court rejected this idea.

### III.

Finally, regarding Myers' assertion that counsel failed to consult about the possibility of pleading guilty to an open plea, the record reflects that the government, and Lewis, both concede that Myers was not offered an open plea. The Court will thus assume that counsel acted deficiently, and find that the first prong of *Strickland* is met. Still, however, Myers must demonstrate to the Court that the second, prejudice-prong applies. Myers cannot do this. The evidentiary hearing proved that Myers would not have even considered, let alone accept, an open plea offer since the possibility of a 15 year to life sentence was on the table. He admits that he was trying to avoid this—even recently. [*See, e.g.,* R. 103 at 2].

In sum, the record does not support Myers' argument that counsel failed to adequately consult with him, as in *Sawaf*. Rather, the record supports the conclusion that counsel consulted with him regarding the issues, the parties' positions, and the uncertain outcome due to the developing law. In addition, he knew the outcome that the United States wanted (a plea with a minimum of 15 years) and the outcome he faced if he went to trial (a guideline range of 262-327 months). He further realized that by entering a plea he would benefit from

acceptance of responsibility. These are not uncomplicated issues that a defendant would understand in the absence of consultation with competent counsel. Clearly, the record compels a finding that he consulted with counsel regarding these issues. Myers knew and understood the issues and the consequences. He understood how he stood to benefit through a plea agreement and how he might be affected by going to trial.

This supports the conclusion that Myers would not have accepted the open-plea offer. The Court fails to see any prejudice.

### IV.

A Certificate of Appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." *Miller-El v. Cockrell*, 537 U.S. 322, 336; 28 U.S.C. § 2253(c)(2). In cases where a district court has rejected a petitioner's constitutional claims on the merits, the defendant must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When the denial is based on a procedural ruling, the defendant must show that jurists of reason would find it debatable whether the motion states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.*

In this case, reasonable jurists would not debate the denial of Myers's § 2255 motion or conclude that "the issues presented are adequate to deserve encouragement to proceed further." *Cockrell*, 537 U.S. at 327. Accordingly, the undersigned also recommends that the District Judge deny a certificate of appealability upon the entry of a final order in this matter.

## V.

"Under our adversary system, once a defendant has the assistance of counsel the vast array of trial decisions, strategic and tactical, which must be made before and during trial rests with the accused and his attorney. Any other approach would rewrite the duties of trial judges and counsel in our legal system." *Estelle v. Williams*, 425 U.S. 501, 512 (1976). The Court is not convinced that Myers felt "forced" to go to trial because counsel "would not tell [him] if [he] was ACCA eligible." [R. 103 at 2]. In fact, the testimony from the evidentiary hearing, and the record, clearly demonstrates that Myers was trying to avoid a lengthy sentence. He did not want to listen to counsel's opinion that he was not a career offender; instead, he wanted to gamble on his chances at trial. Myers did not look favorably to the sentencing judge being the final arbiter on the ACCA enhancement. He wanted counsel to give him one hundred percent assurance, even despite the added cushion that the second plea agreement preserved his right to appeal an adverse ACCA ruling. However, the facts and the law are not on Myers' favor. The undersigned simply cannot find that Myers received ineffective assistance of counsel with regard to plea consultation. Accordingly,

**IT IS RECOMMENDED** that:

(1) Jason Edward Myers' Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence [R. 73] be denied; and

(2) the District Judge deny a Certificate of Appealability on the remaining issue in conjunction with the Court's entry of final judgment in this matter.

**IT IS FURTHER ORDERED** that Myers' Motions for a Status Hearing [R. 99, 102] be denied as moot.

\* \* \* \* \*

Particularized objections to this Recommended Disposition must be filed within fourteen (14) days of the date of service of the same. 18 U.S.C. § 636(b)(1); *United States v. Campbell*, 261 F.3d 628, 632 (6th Cir. 2001); *Bituminous Cas. Corp. v. Combs Contracting Inc.*, 236 F. Supp. 2d 737, 749–50 (E.D. Ky. 2002). Generalized objections or objections that require a judge's interpretation are insufficient to preserve the right to appeal. *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004); *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995). Failure to make a timely objection consistent with the statute and rule may result in waiver of further appeal or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981). Any response to another party's objections must be filed within fourteen (14) days after being served with a copy thereof. 28 U.S.C. § 636(b)(1)(C); Fed. R. Crim. P. 59(b)(1).

Signed May 6, 2020.



Signed By:
*Edward B. Atkins*  EBA
United States Magistrate Judge